The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support the Full Commission's findings of fact, conclusions of law, and ultimate order.
Based upon all of the competent evidence adduced at the hearing, the undersigned make the following
FINDINGS OF FACT
1. Plaintiff is a 38 year-old married male who was born in Conception, Chile and lived there until 1980, when he came to the United States on a cargo ship. A year later in New Orleans, Louisiana, he married his present wife, who is a native American citizen able to read and write the English language. As a result he is a permanent United States resident.
He graduated from high school in Chile where instructions were in Spanish. Spanish is his primary language, and English is a secondary one. After graduating from high school, he served as a navigator in the Chilean Navy. He then worked in a similar capacity for a number of different shipping companies all over the world before coming to the United States in 1980. Although plaintiff now denies it, he gave one of the rehabilitation specialists earlier involved in his case a history of two years of electronics training in college.
2. Plaintiff maintains a valid motor vehicle operator's license. He not only remains able to drive despite his permanent back injury, but does when it suits him to do so as evidenced by the fact that defendant-carrier's private investigator observed him taking his wife to work and his children to school as well as his taking his family to Carowinds for a full day of activity. Plaintiff's testimony that he is significantly more physically limited in his ability to drive is not accepted as credible.
3. As indicated by his testimony at hearing, plaintiff was able to understand and respond to questions directed at him by opposing counsel without the need of an interpreter. Although plaintiff claims to be functionally illiterate in his ability to read and write the English language, his understanding of the English language is far greater than he admits. This is evidenced by his ability to respond at hearing without the need of an interpreter as well as his ability to read and understand the various documents about which he was questioned on cross-examination as well. In addition, there are the numerous letters that he has sent to the Industrial Commission about his case, including Defendants Exhibit Number Seven, which he acknowledges signing, but claims were written entirely by his wife. Even assuming arguendo that the printed bodies of the same letters were written by his wife, it is obvious from the phrasing used that plaintiff at least dictated them.
4. After coming to the United States plaintiff worked as a steel worker for a number of construction firms until 1986 when he became employed in a similar capacity by defendant-employer. This job involved the type of manual labor he can no longer do because of the permanent back injury giving rise hereto. He is now limited to light/sedentary work where he is not required to lift in excess of 15 pounds or to repetitively bend, stoop or crawl, push or pull in excess of 40 pounds and is allowed to frequently change bodily positions.
5. Since September of 1991, plaintiff has been receiving Social Security Disability Benefits and is obviously not motivated to return to work. He has consistently sabotaged the efforts of the vocational rehabilitation specialist involved to obtain suitable alternate employment for him under the circumstances more fully hereinafter described.
6. On July 13, 1989 plaintiff sustained the admittedly compensable back injury giving rise hereto when another employee dropped their end of the 250 pound reinforced steel column they were carrying requiring him to undergo a spinal fusion from the L4-S1 levels of his lumbosacral spine.
7. Plaintiff ultimately reached maximum medical improvement and/or the end of the healing period from the same injury and corrective surgery thereby on June 18, 1991, when he was released from Dr. Darden's care to return to work. He was rated for a twenty-five (25) percent permanent-partial disability of the back as a result of the same injury, and the corrective surgery necessitated thereby. He was unable to return to his regular steel worker's job or any other job similarly involving manual labor. Rather, he is limited to the type of lighter/sedentary work previously described.
8. Although plaintiff undoubtedly experiences some residual pain from his permanent back injury, his complaints are exaggerated and are neither consistent with the medical evidence nor consistent with the activities he has been observed engaging in by defendant-carrier's private investigator. These activities involved climbing over an approximate four foot high wall while putting up Halloween decorations for his children, bending over in the process, driving his wife to work and children to school, clearing ice from the windshield of his vehicle, and taking an all day family outing to Carowinds Amusement Park. Those same observed activities are inconsistent with the noticeable and exaggerated limp that plaintiff had displayed when he went for job interviews on occasion as well as plaintiff's actions at hearing where he was observed by the Deputy Commissioner continually alternating between sitting and standing every few minutes, but at other times was observed by the Deputy Commissioner leaning back comfortably in his chair with his arms on the sides thereof. By similar token — and although it is no longer medically required, plaintiff continues to wear a noticeable body brace whenever he goes to job interviews and was wearing the same body brace at initial hearing — yet the only thing he needs to wear for comfort is a lumbosacral corset, which is not even medically required. It is this same lumbosacral corset that plaintiff was wearing, observed by defendant-carrier's private investigator, while engaging in the type of physical activities inconsistent with his physical complaints as well as the need of wearing the visible body brace. If plaintiff truly needed to wear the body brace to support his back, then he would have been wearing it when he was engaged in the significantly more strenuous physical activities that were involved when he was observed by defendant-carrier's private investigator as opposed to the lesser required ones in searching for a job or attending hearing. Obviously the only purpose plaintiff continues to wear the body brace is to dramatize his alleged disability.
9. After plaintiff had been released by Dr. Darden to return to work in July of 1990 defendant-carrier engaged the services of Hilda Baker, a vocational rehabilitation specialist employed by American Rehabilitation Company, in order to assist in obtaining the type of suitable alternate light/sedentary work required by his permanent back injury; Ms. Baker contacted plaintiff in early September of that year to arrange a meeting; however, plaintiff initially refused to meet with her and only agreed to do so after his second of three attorneys to date intervened. A meeting was subsequently held at the same attorney's office on or about September 29, 1991.
10. At their second meeting on October 7, 1991 Hilda Baker did a vocational assessment of plaintiff. On October 24, 1991 she met with him at the library to discuss job placement. She met with him on a number of occasions in an attempt to obtain suitable alternate employment until she finally suspended further vocational efforts after February 6, 1992 when plaintiff left without completing the three day evaluation she had arranged for him to undergo at Goodwill Industries in order to further assess his ability to work and obtain employment.
11. There is suitable light/sedentary work available in the Charlotte area for someone of plaintiff's age, education, background and work experience having the physical limitations that he does from his permanent back injury.
12. Although defendants have made considerable efforts to find suitable alternate light/sedentary work and to thereby satisfy their burden of establishing that the same work is both available and that plaintiff can obtain it they have been prevented from doing so by plaintiff's failure to cooperate with the involved vocational rehabilitation specialist, Hilda Baker, in those efforts under the circumstances more fully hereinafter described.
13. In fact, not only has plaintiff failed to cooperate in those efforts, but has attempted to sabotage them despite being twice ordered by the Industrial Commission to cooperate with vocational rehabilitation efforts. The record is replete with examples of plaintiff's actions, including, but not limited to, the following ones:
In the first place, as aforesaid, he initially even refused to meet with the same rehabilitation specialist until his attorney intervened.
In the second place, when he went to the Employment Security Commission for the express purpose of registering on October 24, 1991, at Hilda Baker's request, plaintiff refused to do so and only ultimately registered at the Employment Security Commission in January of the following year.
In the third place, he was 45 minutes late for an employment interview that Hilda Baker had arranged with a security firm, Wells Fargo, on the same date (October 24, 1991).
In the fourth place, plaintiff claimed to have transportation problems because of being unable to drive, yet he has been able to take his wife to work and children to school as well as take his family on an all day outing to Carowinds Amusement Park. Therefore, the undersigned do not accept as credible plaintiff's testimony that he is significantly more limited in his ability to drive.
In the fifth place, plaintiff claims incapacitating pain, yet he was observed by the private investigator hired by defendant-carrier engaging in activities totally inconsistent with the type of incapacitating pain claim, including the ones already described in the above Findings of Fact.
In the sixth place, despite being advised by Hilda Baker to wear appropriate clothing for job interviews, plaintiff continued to wear the same old lint covered sweat pants and claimed that he did not have the proper clothing to wear — yet he wore appropriate shirt and slacks when he was observed at his children's school by defendant-employer's private investigator.
In the seventh place, he telephoned the job leads that Hilda Baker had generated for him rather than going out to the various employers and applying for the jobs in person as he had been directed to do.
In the eighth place, at times he would show up for job searches with his hair uncombed and unshaven and on at least one occasion had a noticeable body odor.
In the ninth place, he was openly hostile to Hilda Baker and by his conduct and actions clearly demonstrated that he had no intention of cooperating in her efforts to obtain suitable employment for him.
In the tenth place, he did not always show up on time for his meetings with Hilda Baker. On at least one occasion he did not allow the two to four hours that Hilda Baker had advised him in advance would be required for a job search. Rather, he left early to take care of an unrelated family matter.
In the eleventh place, plaintiff continued to wear the same noticeable body brace to meetings that he had with perspective employers for job interviews which, as aforesaid, was neither medically nor otherwise required and was in fact worn for the sole purpose of dramatizing his alleged disability.
In the twelfth place, when he did go to a prospective employer for interviews plaintiff did not attempt to present his disability in the best possible light so as to facilitate his obtaining the job as he had been instructed to do by Hilda Baker in mock job interviews. Instead, he did so in the most negative light possible by saying such things as he was already receiving Social Security Disability, had a twenty-five (25) percent disability of the back, wore a TENS Unit and took medication.
In the thirteenth place, of the 30 job leads that Hilda Baker found for plaintiff she was only able to identify several that he actually applied for.
In the fourteenth place, plaintiff only attended parts of two days of the three day evaluation that Hilda Baker had arranged for him at Goodwill Industries to assess his ability to obtain employment.
In the fifteenth place, when plaintiff attended a job fair at Hilda Baker's request he did not wear the appropriate clothing that she had directed him to wear and appeared at the job fair with his hair uncombed and his face unshaved.
* * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission find as follows
CONCLUSIONS OF LAW
1. Although defendants have made considerable efforts to find suitable alternate light/sedentary work and to thereby satisfy their burden of establishing both that the same work is available and that plaintiff can obtain it, they have been prevented from doing so by plaintiff's failure to cooperate with the involved vocational rehabilitation specialist in those efforts under the circumstances more fully described in the Findings of Fact herein above, resulting in defendants suspending their rehabilitation efforts on February 6, 1991. Plaintiff, who the Industrial Commission had already earlier twice ordered to cooperate in those same vocational rehabilitation efforts, is no longer entitled to any further weekly compensation benefits after February 6, 1991 based on his unjustifiable refusal to cooperate in vocational rehabilitation efforts. G.S. 97-25, G.S.97-32. Plaintiff has, in effect, made his election of benefits by his continued refusal to cooperate. His actions have proven that he has no intention of ever cooperating with rehabilitative efforts.
2. As a result of the injury by accident giving rise thereto, however, plaintiff does retain a twenty-five (25) percent permanent-partial disability of the back entitling him to 75 weeks of compensation at a rate of $250.01 per week commencing as of February 6, 1991 when he was no longer entitled to weekly compensation benefits for his alleged incapacity to work.
* * * * * * * * * * *
Based upon these conclusions of law, the Full Commission have determined there exists no basis for amending the Award. Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following
AWARD
1. Defendants shall pay plaintiff, on account of his retained twenty-five (25) percent permanent-partial disability of the back, compensation at a rate of $250.01 per week commencing as of February 6, 1992. Such compensation as has accrued the same shall be paid in lump sum, without commutation, subject to a reasonable attorney fee hereinafter approved and to a credit for the benefits that defendants have continued to pay since February 6, 1992.
2. As there are assumably no accrued compensation benefits due under the above Award from which an attorney fee can be assessed for plaintiff's counsel because defendants have continued to pay weekly compensation benefits, defendant-carrier shall forward every fourth compensation check payable under the above Award directly to plaintiff's counsel for his attorney fees.
3. To the extent they have not already done so defendants shall pay all medical expenses incurred by plaintiff as a result of the injury by accident giving rise hereto when bills for the same are submitted on proper forms, through defendant-carrier, to the Industrial Commission for approval and are approved by the Commission.
4. Defendants shall bear the costs.
5. This case is HEREBY REMOVED from the Full Commission hearing docket.
This the __________ day of ________________________, 1994.
 S/ _______________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ ______________________ JAMES J. BOOKER COMMISSIONER
S/ ______________________ J. RANDOLPH WARD COMMISSIONER
JHB/nwm 11/30/94